FILED

NOT FOR PUBLICATION

MAY 24 2017

UNITED STATES COURT OF APPEALS

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

KAREN SINCLAIR, individually and as
Guardian Ad Litem for K.S. and J.A.,
minor children and JULIAN AL-
GHAMDI,

          Plaintiffs-Appellants,

  v.

MICHAEL AKINS, Detective, Grandview
Police Department and MARK
NEGRETE, Police Officer, Selah Police
Department,

          Defendants-Appellees.

No.   14-35617

D.C. No. 2:12-cv-03041-RMP

MEMORANDUM[*]

Appeal from the United States District Court
for the Eastern District of Washington
Rosanna Malouf Peterson, District Judge, Presiding

Argued and Submitted May 9, 2017
Seattle, Washington

Before: McKEOWN, BEA, and N.R. SMITH, Circuit Judges.

---

       [*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

Appellants Julian Al-Ghamdi and Karen Sinclair (individually and as Guardian Ad Litem for her two minor children K.S. and J.A.) appeal the district court's partial grant of summary judgment in favor of Appellees, the district court's rulings on a discovery dispute, several evidentiary issues raised during trial, and several jury instructions. We have jurisdiction to hear this appeal, 28 U.S.C. § 1291, and we affirm.

**1.** The district court properly granted summary judgment in favor of Appellees on the judicial deception claim. "[A] Fourth Amendment violation occurs" when an officer, detective, or prosecutor "intentionally or recklessly omit[s] facts [from a search warrant affidavit] required to prevent technically true statements in the affidavit from being misleading." *Liston v. Cty. of Riverside*, 120 F.3d 965, 973 (9th Cir. 1997). To proceed to trial on a claim that the government procured a warrant through deception, Appellants "must make (1) a 'substantial showing' of deliberate falsehood or reckless disregard for the truth, and (2) establish that but for the dishonesty," probable cause would not have existed. *Butler v. Elle*, 281 F.3d 1014, 1024 (9th Cir. 2002) (quoting *Liston*, 120 F.3d at 793). Even if Michael Akins and Therese Murphy had included all the information Appellants insist should have been contained in the search warrant affidavit, probable cause to search Appellants' residence (705 Stassen Way) for evidence

2

related to the possession and manufacturing of marijuana still would have existed. That Al-Ghamdi possessed a medical marijuana certificate would not have materially affect that evidence.

**2.** The district court properly granted summary judgment in favor of Appellees on the knock and announce claim. The Fourth Amendment requires that police officers knock and announce their presence before entering a residence unless they reasonably believe that doing so would be "dangerous or futile, or . . . would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." *Richards v. Wisconsin*, 520 U.S. 385, 394 (1997). Before entering 705 Stassen Way through the front door, the officers heard officers who had entered through the backyard encounter an individual and shout, "Police, search warrant, get on the ground." Once this occurred, it was reasonable for the officers to believe that the occupants of 705 Stassen Way were alerted to the officers' presence and might destroy evidence, especially considering "the disposable nature of the drugs" that were the subject of the search warrant. *Id.* at 389, 395; *see also United States v. Reilly*, 224 F.3d 986, 991 (9th Cir. 2000) (finding officers were not required to knock and announce their presence after a "noisy scuffle" that occurred outside the suspect's residence "could have alerted [the suspect] to the officers' presence and allowed him to dispose of evidence or

3

arm himself"). Moreover, there is no evidence that the officers themselves created the exigency that excused the need for them to knock and announce their presence. *See United States v. Lundin*, 817 F.3d 1151, 1158 (9th Cir. 2016). Therefore, even if the officers did not knock and announce their presence before entering, their entry did not violate the Fourth Amendment.

**3.** Appellants waived their argument that the manner in which the officers conducted the search was unreasonable. Appellants did not adequately raise this argument below, *United States v. Carlson*, 900 F.2d 1346, 1349 (9th Cir. 1990), and Appellants have failed to cite to the record when describing the alleged damage the officers caused during the search, *Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. La. Hydrolec*, 854 F.2d 1538, 1548 (9th Cir. 1988) (per curiam); *see also* Fed. R. App. P. 28(a)(8)(A); 9th Cir. R. 28-2.8.

**4.** The district court properly granted the officers qualified immunity on the excessive force claim. "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam) (quotation marks and citation omitted). Although "overly tight handcuffing can constitute excessive force," *Wall v. Cty. of Orange*, 364 F.3d 1107, 1112 (9th Cir. 2004), we cannot conclude that it was "clearly established"

4

that the officers' failure to loosen Al-Ghamdi's handcuffs was an excessive use of force, *see White*, 137 S. Ct. at 551–52. Generally, "officers executing a search warrant for contraband have the authority to detain the occupants of the premises while a proper search is conducted. Such detentions are appropriate, . . . because the character of the additional intrusion caused by detention is slight and because the justifications for detention are substantial." *See Muehler v. Mena*, 544 U.S. 93, 98 (2005) (internal quotation marks and citations omitted). Appellants have failed to cite authority holding that a detainee's complaints of tight handcuffs alone, without any physical manifestation of injury (during or after the handcuffing), where the initial handcuffing was justified, constituted excessive force. Because Appellants have "failed to identify a case where . . . officer[s] acting under similar circumstances as [the officers here] w[ere] held to have violated the Fourth Amendment," we must conclude that the law on this issue is not "clearly established." *See White*, 137 S. Ct. at 552.

It was also not "clearly established" at the time of the search that the officers' use of guns during the search was excessive. Under Appellants' version of the facts (as supported by the record), officers pointed their guns at Al-Ghamdi and Sinclair momentarily when they first entered 705 Stassen Way. Then an officer watched over Sinclair and her two children with his gun pointed in their

5

general direction for about five minutes. The officers' use of weapons was far less threatening and severe than those cases in which we have found the use of weapons violated the Fourth Amendment. *See, e.g.*, *Robinson v. Solano Cty.*, 278 F.3d 1007, 1010, 1013–15 (9th Cir. 2002) (en banc). Thus, our "pre-existing law" does not make it "apparent" that the officers' use of weapons was unlawful. *See White*, 137 S. Ct. at 552 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Accordingly, the officers are entitled to qualified immunity.

**5.** The district court properly granted summary judgment on the unlawful arrest claim. At the time of the search, it was "unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance," Wash. Rev. Code § 69.50.401(1) (2009), including marijuana, *id.* § 69.50.204(c)(14). Simple possession of small amounts of marijuana was also illegal under Washington law. *Id.* § 69.50.4014 (2009). During the search of 705 Stassen Way, officers found eight marijuana plants growing inside and eleven large marijuana plants growing in the backyard. Because Sinclair resided at 705 Stassen Way and was clearly aware of the presence of these plants, it was reasonable for the officers to believe that Sinclair had violated Washington law. *See Rosenbaum v. Washoe Cty.*, 663 F.3d 1071, 1076–78 (9th Cir. 2011) (per curiam).

**6.** The district court did not abuse its discretion in denying Appellants' request to compel Travis Shephard to respond to certain deposition questions. Appellants have failed to articulate why the questions (about a search warrant affidavit Shephard drafted in a different case several years after the events at issue in this case occurred) were relevant to this case, *see* Fed. R. Civ. P. 26(b)(1), or how Shephard's answers to the questions would "lead to the discovery of [other] admissible evidence," *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005).

**7.** Even if the district court abused its discretion in allowing Murphy to testify as to whether probable cause existed to support the search warrant, reversal is not required, because Appellants have failed to establish prejudice. *See Wagner v. Cty. of Maricopa*, 747 F.3d 1048, 1052 (9th Cir. 2013) (holding that reversal is required only if the trial court's evidentiary ruling was "both erroneous and prejudicial"). Appellants assert in their opening brief that they suffered prejudice, because the lack of an expert report meant they "could not adequately prepare to challenge" Murphy's opinion testimony about probable cause. This argument is unavailing, because Appellants deposed Murphy, so they were aware of what facts she could testify to and what opinions she might offer. Appellants do not assert until their reply brief that there was a risk that the jurors would simply defer to

7

Murphy as an authoritative prosecutor on the issue of probable cause. This argument is deemed waived. *See United States v. Romm*, 455 F.3d 990, 997 (9th Cir. 2006).

In addition, Appellants have failed to identify any leading questions Appellees asked Murphy and have failed to explain how these allegedly leading questions prejudiced them. Accordingly, Appellant have waived this argument, and we do not consider it. *Nilsson*, 854 F.2d at 1548; *see also* Fed. R. App. P. 28(a)(8)(A); 9th Cir. R. 28-2.8.

**8.** The district court permitted Appellants to question Mark Negrete about his deposition at multiple points during the trial. During closing arguments, Appellants were able to highlight the discrepancies between Negrete's affidavit, his deposition testimony, and his trial testimony. Because Appellants were able to highlight these discrepancies, any limits the district court placed on Appellants' ability to read from Negrete's deposition or question him about his deposition were not prejudicial and do not require reversal. *See Wagner*, 747 F.3d at 1052.

**9.** We reject Appellants' argument that reversal is required, because Appellees asked numerous improper questions and made a litany of "nonsensical objections" during trial. Appellants have failed to cite to the relevant portions of

the record and have failed to explain the legal basis for these complaints. *See* Fed. R. App. P. 28(a)(8)(A).

**10.** The district court did not abuse its discretion in declining to instruct the jury on the text of Washington's Medical Marijuana Act. Whether Al-Ghamdi possessed a valid medical marijuana permit and whether Sinclair was protected by the permit were not elements of any of the five claims before the jury, so the district court did not need to instruct the jury on the provisions of the Act. *See Van Cleef v. Aeroflex Corp.*, 657 F.2d 1094, 1098–99 (9th Cir. 1981) ("A failure to give a requested jury instruction is not reversible error so long as the trial judge gives adequate instructions on each element of the case . . . [and] so long as he adequately covers the principles necessary for jury guidance." (citations omitted)). Therefore, instructing the jury on the text of the Medical Marijuana Act would not have changed the jury's probable cause analysis on any of the claims, and it may have actually confused the jury.

**11.** The district court did not commit plain error when it gave Instruction 19, which informed the jury that the district court had already "determined as a matter of law that the officers had probable cause to [(1)] obtain a warrant to search Plaintiffs' residence for evidence of possession and manufacture of marijuana" and "[(2)] to arrest Plaintiffs for possession and manufacture of marijuana." This

9

instruction was given to clarify that the jury did not need to decide these issues. Rather, the jury needed to determine whether there was probable cause to search for evidence related to drug trafficking. Even if the district court should only have advised the jury that probable cause (as it relates to the possession and manufacture of marijuana) was not at issue, such error was not "obvious." *See C.B. v. City of Sonora*, 769 F.3d 1005, 1018 (9th Cir. 2014). Further, because any error in this instruction did not "seriously impair[] the fairness, integrity, or public reputation of judicial proceedings," we will not exercise our discretion to correct any error. *Id.* at 1019 (citation omitted).

**12.** The district court also did not commit plain error when it gave Instruction 12, which instructed the jury as to when "deliberate or reckless falsehoods or omissions are material." Appellants have failed to provide a legal basis for their contention that materiality is always a legal concept that should never be given to a jury to decide. Accordingly, we cannot conclude that "(1) there was an error; (2) the error was obvious; and (3) the error affected [Appellants'] substantial rights." *Id.* at 1018.

**AFFIRMED.**